UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                        19-cr-764 (PKC)

                -against-

                                                            OPINION AND ORDER

AHMED OMAIS SERHAN,

                        Defendant.
------------------------------------------------------------X
AHMED OMAIS SERHAN,

                        Movant,

                                                                        24-cv-9234 (PKC)

                -against-

UNITED STATES OF AMERICA,

                        Respondent.
------------------------------------------------------------X
CASTEL, Senior District Judge:

        Ahmed Omais Serhan moves to vacate, set aside or correct his sentence,

pursuant to 28 U.S.C. § 2255.

        Serhan and another were charged with participating in a conspiracy to

supply military grade weapons to the National Liberation Army (the "ELN"), a designated

foreign terrorist organization operating principally in Colombia, in exchange for cocaine

that defendant and his co-conspirators intended to distribute.  Section 960a of title 21

makes it unlawful to engage in a conspiracy that would amount to a controlled substance

violation if committed in the United States knowing or intending to provide anything of

value to a designated foreign terrorist organization.  He was also charged with carrying

firearms in connection with the narcoterrorism conspiracy, conspiracy to conduct money laundering, and two substantive counts of money laundering.

Pursuant to a plea agreement, Serhan pled guilty to a lesser included offense of conspiracy to violate section 960a but with an intent to distribute a lower quantity of cocaine, i.e., more than 500 grams of cocaine rather than the more than 5 kilograms alleged in the indictment, thereby reducing his mandatory minimum sentence from twenty years to ten years.  The agreement also provided for him to plead guilty to conspiracy to commit money laundering and one substantive money laundering count.  The second money laundering count and the count for carrying firearms in the course of a narcoterrorism conspiracy were dismissed pursuant to the plea deal.  The Stipulated Guidelines Range in the plea agreement was life imprisonment with a mandatory minimum term of ten years.

The Court imposed a below-Guidelines sentence of principally 240 months imprisonment.  (ECF 59.)[1]  Serhan appealed and the appeal was voluntarily dismissed. (ECF 75.)

Serhan now argues that his counsel was constitutionally ineffective.[2] Because he is proceeding pro se, the Court considers his arguments liberally and with solicitude, construing them to raise the strongest points consistent with his motion.

Serhan's Counsel

Serhan first appeared in this district on May 17, 2021.  One year into the case, on May 18, 2022, his counsel wrote to the Court advising that the defendant was

---

[1] All references to "ECF __" are to the docket in 19-cr-764 (PKC) unless otherwise noted.
[2] "All of the below grounds for relief are in relation to defense attorney, Mr. Stein's ineffective assistance of counsel."  (ECF 76 at 22.)

requesting a change of counsel. (ECF 33.) The Court appointed additional counsel to represent Serhan on pretrial matters, including any plea offers and the wisdom of changing trial counsel. (Minute Entry of June 7, 2022.) The two counsel jointly represented Serhan until May 4, 2023 when the Court granted the first counsel's application to withdraw and the second counsel, Mark Stein, became lead counsel. (ECF 47.)[3]

In connection with the section 2255 motion, Serhan executed a waiver of the attorney-client privilege as to Mr. Stein, who represented Serhan on his guilty plea (ECF 85), and Mr. Stein thereafter submitted a declaration described below.

The Guilty Plea

At his plea proceeding Serhan was represented by Mr. Stein and his colleague Ms. Mattson and had the assistance of an Arabic interpreter. Serhan acknowledged under oath that he had discussed the charges and the evidence underlying the charges with these two lawyers, that he had enough time to consider his options and was satisfied with his lawyers' representation of him. (ECF 48, Plea Tr. at 4.) He stated that he asked Mr. Stein questions about the plea agreement, and Mr. Stein answered those questions to his satisfaction. (Id. at 11–12.)

The government laid out on the record the elements of each offense and what in summary the government's evidence would be if the case proceeded to trial. (Id. at 14–15, 17–18.) Serhan then told the Court in his own words what he did that led him to believe he was guilty of the three crimes. As to Count One, he stated as follows:

> THE DEFENDANT: During the period of 2018 to 2019, I discussed and agreed to participate in distributing the money that proceeds from the drug transaction. The amount of the cocaine that I participated is over 500 grams, and I used to money tran -- wire transfer the money from the transaction of cocaine. And I do send the money according to the instruction, and I had,

---

[3] The first counsel in the case is now deceased.

according to the instruction I was receiving, to give the money cash in determined place and time, or send wire transfer to determined accounts. I realize that part of that proceed from this -- money proceeds from these transactions, at least part of it was going to the Army of -- Liberation Army of Columbia. I knew that the Liberation Army of Columbia participated in terrorist activities.

(Id. at 15–16.)

The Court inquired of defense counsel whether there was "any basis to challenge the government's proffer that the Liberation Army of Col[o]mbia, also known as the National Liberation Army, or ELN, was designated by the United States Secretary of State as a foreign terrorist organization" and counsel indicated he was not aware of any. (Id. at 16.)

The Court required the government to lay out its theory of venue and it stated that for each count venue was "pursuant to 18 U.S.C. 3238, because at least one of the co-conspirators in this case was first brought to this district upon arrival in the United States." (Id.) Again, defense counsel confirmed that there was no basis to challenge the government's proffer. (Id.)

With regard to Counts Three and Four, Serhan allocated as follows:

THE DEFENDANT: From 2017 to 2019, I discussed and agreed to participate with others to get -- to distribute the money proceeding from the cocaine transaction. I was participating and receiving that money proceeds from the transactions, from the sale of cocaine, and distribute these proceeds through wire transaction to determine the bank accounts according to instructions.
THE COURT: . . . the conduct that you describe was done for the purpose of carrying on the illegal narcotics trafficking that you have previously described; is that correct, sir?
THE DEFENDANT: Yes.
THE COURT: Were your actions designed to conceal and disguise the proceeds of that unlawful activity?
THE DEFENDANT: Yes.
THE COURT: All right. Did you know what you were doing was wrong and unlawful?

4

THE DEFENDANT: Yes. Yes.

(Id. at 19–20.)

Before asking Serhan to enter his guilty plea, the Court inquired of him whether he had any questions for the Court and he indicated that he did not. (Id. at 20.) He then pled guilty to each of the three counts. (Id. at 20–21.)

Legal Standard: Ineffective Assistance of Counsel

A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 589–90 (2d Cir. 1996) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

"[A] defendant is barred from collaterally challenging a conviction under [section] 2255 on a ground that he failed to raise on direct appeal. . . . An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)). When a petitioner attempts to establish "cause" by asserting ineffective assistance of counsel, courts apply the two-prong test in Strickland v. Washington, 466 U.S. 668 (1984). Sapia v. United States, 433 F.3d 212, 218 (2d Cir. 2005). Additionally, "a [section] 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (internal quotation marks and citation omitted).

On a claim of ineffective assistance of counsel, a defendant must first overcome the presumption of effective representation by presenting evidence that counsel's

performance fell below an objective standard of reasonableness based on prevailing professional norms. Strickland, 466 U.S. at 688–90. Second, the defendant must prove prejudice by showing a reasonable probability that, but for counsel's performance, the result of the case would have been different. Id. at 693–94. It is insufficient to show that counsel's errors had "some conceivable effect" on the outcome. Id. at 693. Instead, the defendant must show "a probability sufficient to undermine confidence in the outcome" of the case. Id. at 694.

Actions or omissions by counsel that "'might be considered sound trial strategy' do not constitute ineffective assistance." United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (citations omitted). "Counsel's election to forgo an unsupported argument plainly falls into this category." Id.

Specific Claims of Ineffective Assistance of Counsel

A. The Existence of a Co-Conspirator. Serhan asserts that his counsel was constitutionally ineffective because he did not argue that the only members of the conspiracy other than himself were confidential sources working for the government who do not qualify as co-conspirators. But the Stein Declaration rebuts the claim that the defense was not considered and explains why it would not have succeeded:

> . . . Mr. Serhan asserts that the conspiracy charges were entirely based on his communicating with Government informants, not actual co-conspirators; and that this could have served as a defense if he had gone to trial. I specifically discussed this issue with Mr. Serhan prior to his plea. In doing so, I advised him that, given the Government's evidence that he coordinated with non-Government informants and other individuals (including his co-defendant) in conducting the charged conspiracies, this would not be a viable defense.

(Stein Decl. ¶ 6.) The co-defendant referred to was Hani Lakkis Lakkis who was expressly named as a co-conspirator in Count One of the indictment. With regard to Count Three,

6

the money laundering conspiracy charge, the government had one or more witnesses who could testify that the defendant told them he "charges a fee of about 14 percent of the laundered sum. SERHAN explained that his 'office' determines the fee, not SERHAN, and that his associates in Lebanon, rather than SERHAN himself, pocket the profit." (Serhan Complaint ¶ 17(e).)[4] It was not constitutionally ineffective assistance of counsel to refrain from pursuing an argument that was doomed to fail. Best, 219 F.3d at 201.

B. An Entrapment Defense. Serhan also complains that his lawyer did not consider and raise an entrapment defense to the counts of the indictment. This, too, is rebutted by his former counsel:

> . . . Mr. Serhan asserts that he was not informed of the potential defense of entrapment by the Government that resulted in his commission of the alleged crimes. I and my team conducted extensive research and factual analysis of this potential defense. Ultimately, I determined that the evidence of Mr. Serhan's prior involvement in similar offenses, and his proactive role in the charged conspiracies, would not allow for a viable defense of entrapment. I discussed this conclusion extensively with Mr. Serhan prior to his decision to plead guilty.

(Stein Decl. ¶ 7.)

The entrapment defense has "two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Mathews v. United States, 485 U.S. 58, 63 (1988). Thus, it is not a viable defense if the government can prove beyond a reasonable doubt that the defendant was predisposed to commit a crime, meaning that he was "ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so." United States v. Salerno, 66 F.3d 544, 547 (2d Cir. 1995) (internal quotation marks

---

[4] References to the "Serhan Complaint" are to the affidavit of a Special Agent of the DEA in support of an arrest warrant. It is found at ECF 1.

7

omitted).  It is legally permissible for a defense counsel to argue inconsistently that his client committed no crime but, if he did, he was entrapped by the government.  See Mathews, 485 U.S. at 63–66.  However, that is an awkward and fraught position to advance in front of a jury.  See United States v. Capozziello, 832 F. Supp. 532, 534 (D. Conn. 1993), aff'd, 28 F.3d 102 (2d Cir. 1994) ("[A] defendant who pleads not guilty while asserting the affirmative defense of entrapment carries the risk that the jury will dismiss both theories. In addition, the assertion of an entrapment defense opens the door to other evidence to demonstrate the defendant's propensity to engage in criminal conduct.").  A prudent lawyer would carefully weigh the downside risk of presenting a defense factually inconsistent with other defenses and the evidentiary risk of opening the door to other damaging evidence.  This is consistent with Mr. Stein's approach.

In terms of trading arms for cocaine, Serhan told a confidential source "that he would ask his contacts in Hizbollah about obtaining weapons," thereby indicating a predisposition to deal in illicit arms transactions with a designated terrorist organization. (Serhan Complaint ¶ 22(c).)  Serhan and his co-defendant also told the purported ELN representatives that they would have to travel to Lebanon to meet with their associates before the cocaine-for-weapons deal could proceed.  (Id. ¶ 25(e).)  In conversations, with the purported ELN representatives, Serhan bragged that "he recently had conducted a money laundering transaction, using U.S. dollars, from a European country to China on behalf of the Venezuelan government."  (Pre-Sentence Report ¶ 17.)  Also, during meetings, he "took multiple calls on his cellphone during which he appeared to discuss ongoing money laundering transactions with various clients."  (Id. ¶ 18.)

The decision to forgo an entrapment defense with uncertain prospects and complicating downsides was a tactical and plausible decision of Serhan's trial lawyer.

C. Legal Nexus of the Charge to the United States. Serhan asserts that his counsel was ineffective in failing to assert a jurisdictional defense that the conduct alleged in the indictment had no nexus to the United States. His former counsel responds as follows:

> . . . Mr. Serhan contends that there was no legal basis for the charges in the Indictment because there was no legal nexus to the United States. I and my team researched this issue prior to Mr. Serhan's plea and advised him of our conclusion that there would be no viable basis to move to dismiss the charges on grounds of lack of U.S. jurisdiction. Specifically, there was substantial evidence that Mr. Serhan understood he was acting on behalf of the Colombia-based National Liberation Army (a/k/a the "ELN"), which is designated as a foreign terrorist organization by the U.S. Department of State. In addition, the evidence showed that a portion of the money laundering activity that Mr. Serhan was involved in was processed through a New York bank account, and that cash exchanges occurred in New York.

(Stein Decl. ¶ 8.)

Section 960a(a) of title 21 specifically addresses conduct occurring outside the United States which "if committed within the jurisdiction of the United States" "would be punishable" under the controlled substance prohibitions of U.S. law, i.e., section 841(a) of title 21, if the intended purpose was to provide anything of value to a foreign terrorist organization. Subdivision (b) of section 960a specifically confers jurisdiction over the offense if "after the conduct required for the offense occurs an offender is brought into or found in the United States, even if the conduct required for the offense occurs outside the United States."

9

"When Congress so intends, we apply a statute extraterritorially as long as doing so does not violate due process." United States v. Al Kassar, 660 F.3d 108, 118 (2d Cir. 2011). "For non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests." Id. The application of section 960a to these facts comports with due process. First, Serhan was introduced to "a member of the ELN [who was] responsible for coordinating the transportation of cocaine shipments to Europe and New York" (Serhan Complaint ¶ 22(a)); thus, he knew that the ELN protected cocaine destined for the United States. Second, it is inherently deleterious to the interests of the United States for a foreign terrorist organization that protects and supports the manufacture and distribution of cocaine that is largely bound for the United States to obtain military grade weapons to aid in its mission. This is ample to establish a jurisdictional nexus.

With respect to money laundering, the sworn complaint supporting the arrest warrant asserted the existence of conversations in which Serhan "agreed to launder 200,000 euros in purported ELN cocaine-trafficking proceeds from a country in Europe . . . to New York, New York." (Serhan Complaint ¶ 19.) Indeed, Serhan arranged for a delivery of $102,000 in New York. (Id. ¶ 19(i).)

It would have been a futile act to challenge the indictment on the basis that the offenses did not have a nexus with the United States, and Serhan was not prejudiced by his counsel's decision not to do so.

D. Enhancement for Leadership or Organizer. Serhan's plea agreement contemplated a four-level enhancement on the money laundering offenses as a leader or organizer within the meaning of U.S.S.G. § 3B1.1(a). (Plea Agreement at 3.) There is no claim that he did not understand that his plea agreement included this enhancement.

10

Serhan did receive the four-level enhancement in his sentencing calculation but his Total Offense Level was capped at 43, the highest possible for any grouping of offenses. If the cap did not apply, his Total Offense Level would have been 47 and if he had not received the enhancement, it would have been at 43, the Total Offense Level at which his Guidelines range was calculated. Thus, the inclusion or exclusion of the enhancement had no discernable impact on his Guidelines range or the Court's imposition of a below-Guidelines sentence.

But the enhancement was richly deserved. Per the Pre-Sentence Report at ¶ 16, Serhan "was an international money launderer with coconspirators in North America, South America, and Europe. SERHAN operated a money laundering business that used a network of couriers in the United States, Europe, and Latin America to move money internationally." "Between . . . February 2018 and February 2019, SERHAN and his associates laundered approximately $1,458,845 U.S. dollars and received fees of approximately $265,971 U.S. dollars over the course of seven transactions." (Pre-Sentence Report at ¶ 19.)

In the words of his counsel,

> Mr. Serhan asserts that he should not have received a managerial/supervisory role enhancement in the calculation of his applicable sentencing range under the United States Sentencing Guidelines. We researched and reviewed this issue prior to Mr. Serhan's decision to enter into a plea agreement with the Government. In doing so, I determined that, given the nature and content of Mr. Serhan's communications with others involved in the charged conspiracies, there was no viable basis to argue that he should not receive an enhancement for a managerial/supervisory role. I also discussed this issue with Mr. Serhan prior to his decision to enter into a plea agreement with the Government.

(Stein Decl. ¶ 9.)

11

As the government correctly points out, the stipulated agreement to the enhancement—an enhancement well supported by the facts—was part of a bargained for plea deal that enabled Serhan to escape a mandatory minimum sentence of twenty years. A baseless challenge to the enhancement would have failed but agreeing not dispute the enhancement facilitated a favorable plea deal. Counsel's performance did not fall below the objectively reasonable.

E. No Hearing is Required. Serhan seeks an evidentiary hearing on his assertion of ineffective assistance of counsel, describing it as a "he said, she said" situation. (ECF 92 at 2.) But the points on which Serhan claims to have personal knowledge are his state of mind in entering into a plea and the supposed coercion of his counsel.

On this record, Serhan was placed under oath and swore that he understood the plea agreement and no one had threatened him or forced him to enter the plea agreement or plead guilty. (ECF 48, Plea Tr. at 10–14.) He said he understood that any prediction by anyone, including his counsel, as to what sentence he might receive was not binding on the Court. (Id. at 12.) He had had enough time to consider all of his options and was satisfied with his counsel's performance. (Id. at 4.) See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity," and "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal."); see also Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) ("It was . . . within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing."); United

States v. Seiser, 112 F.3d 507 (2d Cir. 1996) ("[A] hearing is not required where the allegations [in a petitioner's § 2255 motion] are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." (internal quotation marks omitted)).  No hearing was necessary on Serhan's claims raised on the motion.

CONCLUSION

The Court has considered the entirety of Serhan's legal and factual arguments and requests, included any not enumerated herein, and finds them to be without merit.[5]  His motion to vacate, set aside or correct his conviction and sentence pursuant to 28 U.S.C. § 2255 is DENIED.

The Clerk is directed to terminate the motion (ECF 1 in 24-cv-9234 (PKC) and ECF 76 in 19-cr-764 (PKC)) and close 24-cv-9234 (PKC).  The Clerk is also respectfully requested to terminate the motions at ECF 15 in 24-cv-9234 (PKC) and ECF 93 in 19-cr-764 (PKC).

Serhan has not made a substantial showing of the denial of a constitutional right, and accordingly, a certificate of appealability will not issue.  28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163–64 (2d Cir. 2011).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

---

[5] Because he was not prejudiced, Serhan's ineffective assistance arguments fair no better if recharacterized as ordinary "plain error," and there was no discernable "structural error" in any of the proceedings.

13

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        May 13, 2026

COPY MAILED TO:

Ahmed Omais Serhan
Register Number: 45271-509
F.C.I. Oxford
P.O. Box 1000
Oxford, WI 53952